Yes, thank you. All right, Mr. Brown, please proceed. Thank you, and good morning, your honors and counsel, and may it please the court. My name is Hugh Brown, a plearing for Appellant Central Specialties, plaintiff in the underlying case. This is an appeal from the district court's grant of summary judgment in favor of the defendants, Manoman Conti and Jonathan Large. It is, of course, fundamental that summary judgment is only appropriate if there are no disputes of material fact. But instead of taking the facts and drawing all inferences from those facts in favor of Central Specialties, the court finds its own version of the facts. I'd like to focus on three specific issues. First, the Fourth Amendment claim. Second, Central Specialties tortious interference claim. And third, CSI's trespass to shadows claim. On CSI's Fourth Amendment claim, the court found that the three-hour seizure that defendants conducted was reasonable under the circumstances. Not only was this an inappropriate fact finding, it was unproven by the evidence in the record. On Central Specialties tortious interference claim, the court found that defendants were justified in interfering with Central Specialties contract by restricting road weights, even though defendants lacked the statutory authority to impose those restrictions. And on the trespass to shadows claim, the court found that CSI was not deprived of the use of its trucks for a substantial time, despite evidence that CSI was deprived of these trucks for a full three hours. So for these reasons, and as I'll explain, we'll ask that you reverse the district court's decision and remand for a trial on the merits. So counsel, it seems that several of those claims may turn on the involvement of Mr. Large or lack of involvement. One question I had is whether, is there a genuine dispute as to whether he stayed and helped detain the trucks until law enforcement arrived or whether he left right away? Is that an issue or does the record tell us? The record will tell us that Mr. Large stopped the trucks, that he told the drivers that they could not leave, and that he stayed for at least an hour or an hour and a half, possibly two hours. Beyond that, I don't believe the record will fully tell us at this stage, Your Honor. Counsel, how long, how long did it take for law enforcement to arrive after Mr. Large's initial stop? I believe it took approximately an hour or two. The answer to that question is found in an email included in our addendum, which describes the stop in some detail. And I can refer the courts to that email, it's at pages 31 and 32 of Appellant's Addendum. If you would like me to point to the spot in that email where the answer is found, I can do that. That's all right. You can proceed with your argument. Okay. Thank you, Your Honor. The facts, very briefly, my client, CSI, was the contractor on a road resurfacing project for the Minnesota Department of Transportation, and to do its work on that contract, CSI asked to use some haul roads to move material to and from the construction site. Contract required MnDOT to approve suitable haul roads, and before this case, my client had never had a haul road denied. Mr. Large, an Oman County engineer, interfered with that request by illegally keeping spring weight restrictions in place long into the summer, and by doing so, caused MnDOT to deny them. Why was that illegal, if a reasonable conclusion had been made professionally that the roads were in such a condition that the limitation was necessary? It was illegal, Your Honor, because the governing statute, 169.87, provides for two means of road weights. First, road weights can go on during the eight weeks approximately set by the Minnesota Commissioner of Transportation. The second means requires a board determination, which we don't have evidence of here until July 2017, and signposting, which we also don't have evidence of until July 2017. And so, until that board determination was made and signposting was erected, it was illegal for Mr. Large to impose weight restrictions. Let me follow up on that. Is it disputed whether the county board properly enacted the changes to the weight limits before CSI's trucks were stopped? Did they comply with the public notice, did they have a meeting, was there a vote? Is that disputed, or is that not disputed? It's not disputed that the county board legitimately changed the weight restrictions on the morning of July 18th, 2017. We do not believe that there's evidence in the record that the county board properly changed weight restrictions at any time before that. Before that, Mr. Large, unilaterally, and on his own, sort of say so, if you will, said we are maintaining these spring weight restrictions that MnDOT established back in March, as they generally do. And so, to answer your question, at no point before July 18th, 2017, do we believe that the spring weight restrictions, or any weight restrictions, were properly imposed on the I'd like to start by addressing the council question for you. I was looking back briefly at this email that you made reference to, and also trying to remember what I recall about the record, but wasn't central specialties instructed not to use this road? The record is somewhat unclear on that question, your honor. Central specialties contends that it was told not to use the road when Knife River was going to be doing shouldering work, and central specialties believed that Knife River would not be doing shouldering work at the time it intended to run its empty trucks. Therefore, it believed that its use of the road was consistent with what it had been told by Mr. Larch. Moving on to the stop. There are two issues with the district court's decision with respect to the stop. The court assumed that a seizure occurred, but held as a matter of law that it was of a reasonable duration, and therefore permissible as a brief investigative stop. There are two problems with this finding. First, Larch did not claim, and the district court did not find, that CSI was suspected of a crime, or that Larch, as a property engineer, had any power to conduct a seizure. A brief investigative stop requires reasonable suspicion of criminal activity, and neither the court nor the defendants have identified any crime that central specialties was suspected of. And for this reason alone, the seizure was inappropriate. Even if this were not the case, a stop is only permissible if it lasts no longer than reasonably necessary to achieve its purpose. The district court here held, and the defendants claim, that the purpose of the stop was to investigate whether or not these trucks were loaded. But there is no evidence in the record that would support an inference that it would take three hours to determine whether these trucks were loaded, and therefore overweight. Let me ask an even more fundamental question. Can someone without legal authority to initiate a traffic stop have a reasonable suspicion to make an investigatory stop? The district court did not offer any authority for that proposition, nor have defendants, and I am not aware of any, your honor. Why didn't the drivers just leave? They were told by Large that they could not leave, and as Large was the county engineer, his word carried weight with them. They're not attorneys. They don't know what powers Large does and does not have. He told them, based on his authority as county engineer, that they could not leave, and therefore they did not. Also, there is not evidence that Mr. Large removed his truck, which would have permitted their continuing down the road. So for those two reasons, based on Mr. Large's order that they not leave, and based on the fact that he was blocking the road with his truck. Counsel, in my jurisdiction, it's illegal to obstruct traffic. Is that an issue in this case? That is not an issue that has been raised so far, your honor, and perhaps one that I should have raised. Counsel, if I recall correctly, it was mentioned that there were other vehicles that continued on their way, potentially in violation, as your truck was accused of. How did they manage to traverse the road while these other trucks are stopped? Was there an alternate route? At this stage, your honor, the record does not illuminate the answer to that question. That is something that I presume would be a question on direct or across if this matter proceeds to trial. You're in your rebuttal time now. You can continue or you can reserve it. Your honors, I would prefer to reserve the remainder of my time for rebuttal. Thank you, Mr. Brown. Mr. Fullerton. Thank you, your honors. I will start with the fourth amendment question that was raised by CSI. The district court appropriately concluded here that Mr. Large had reasonable suspicion to conduct the stop in this case. There's some question raised by CSI as to whether Mr. Large, as the county engineer, had the authority to conduct a traffic stop. As the district court points out, CSI has not put forth any authority saying that he does not. The constitution applies to prescribe government overreach. As CSI concedes, Mr. Large was certainly an agent of the government. We don't dispute the fact that the fourth amendment, the 14th amendment, those analyses can apply in this case. To the extent that Mr. Large conducted a stop here, that was what the district court assumed. We disputed that at the district court stage, but that was the assumption made by the district court. So, counsel, criminal activity was reasonably suspected to justify the stop in the seizure? The violation of the weight restriction, which I think in Minnesota would have been a petty misdemeanor, was suspected. So the question there becomes, can the government conduct a stop when there's suspicion, reasonable suspicion that a weight violation is in progress? In this case, the district court outlines the communications on pages six through eight of its memorandum. Where it goes through, the emails and CSI had telegraphed in advance that it intended to operate on this road. In those circumstances, the district court appropriately concluded that Mr. Large had reasonable suspicion to conduct the stop. Were these particular trucks empty or loaded? I believe the record would show that as it turns out, they were empty. So wouldn't the reasonable suspicion dissipate once he stopped and saw that they were not loaded? In order to verify they were not loaded, as your honors were just alluding to, there would have had to be some sort of an inspection of the vehicles. What Mr. Large did, what the record shows Mr. Large did, is take some action, we can see it, to indicate to these drivers that they should pull over. Whether it's parking in a lane of traffic, that's a dispute, but it's not a material one. For summary judgment purposes, he indicated that these drivers should pull over. They did so. That sounds more like a citizen's arrest, but that statute doesn't apply here, does it? The statute doesn't apply. The reason we've cited to that statute is just to show that some authority out there that in Minnesota, the legislature would agree that it's not just police officers that can conduct a stop or detain somebody, let's say. But getting back to the original point, Mr. Large called the police right away after, let's call it a stop, and then called the local sheriff's office, the local sheriff's office referred it to the White Earth Police, the White Earth Police then referred it off to the Minnesota State Troopers. But Counselor, you're not relying upon the reasonable suspicion of the officers, you're relying upon the reasonable suspicion of Mr. Large, and I still don't know how that would not dissipate once he sees that the trucks were unloaded, and yet it took three hours to let them go. Yes, I don't think the record would show that Mr. Large conducted his own investigation. He left that to the police, and hence the instruction, undisputed, to the CSI driver that he had called law enforcement. Does he have to have some sort of articulable factual basis for his reasonable suspicion rather than that there's a truck driving on the road? Well, yeah, the reasonable suspicion, what the district court found there was the reasonable suspicion comes to us in light of CSI's advanced communications saying that they were going to use the road despite being instructed not to by MnDOT. MnDOT has the authority to instruct CSI here not to use the road. This is not a case of a passerby on a road or a private citizen, you know, traveling freedom to travel sort of situation. CSI was using the road pursuant to a commercial contract with MnDOT. MnDOT had instructed CSI not to use the road, and the contract that CSI bid the project on makes clear that CSI would need authority from the local road authority, permission, approval, cooperation, in order to use the road. That leads me to another question. Can the suspected breach of a contract support a traffic stop or seizure? It was the suspected violation of the weight limitation here that formed the reasonable suspicion. We've talked about a violation of a contract, and I'm not aware of any precedent that a I would agree that I'm not aware of any precedent that a violation of a contract can support a seizure. It was the violation of the posted weight restriction. The weight restriction was modified and posted the, you know, hours before the stop. CSI had, this gets into the 14th Amendment due process question, but CSI had advanced email notice of that, as well as the signposting itself. So it's undisputed that the road was posted with the new weight limitation at the time of the stop. So that's the answer. I had another question about the haul road designation. Does the lack of a designation as a haul road prohibit the use of the road, or does it just affect the shifting of liability and who has to pay for damage? The designation of the haul road would take the road away from county control and require that MnDOT compensate the county for wear and tear to that road that occurs during the project. Oh, so the question was, does it prohibit the use of the road, or is it just a liability shifting provision? It is both. In the MnDOT contract, I believe it's specification 1515 cited to in both the district court briefing as well as the appellate briefing, that the contractor cannot assume a haul road is going to be designated and cannot use the road unless it meets certain conditions, one of which is make arrangements with the local road authority to use the road, which CSI. Right, and so, Councillor, that leads me back again to the question of, can a breach of a contract be a ground for a seizure by law enforcement officers? The reasonable suspicion- The prohibition on use of the road comes from the contract, not from the law. Right. The reasonable suspicion, there's no dispute that a loaded truck would have violated both the new and old weight restrictions, and so the reasonable suspicion was whether or not it was a loaded truck and whether or not, you know, CSI was operating in violation of that weight restriction. That was the basis- Even a layperson could tell whether the truck was loaded or not. I don't know. That was the basis for the stop, and then at that point, law enforcement was called to the scene. For Fourth Amendment purposes, the question then becomes, when would a reasonable person have determined that they could just leave? As the court pointed out, there's this issue with other trucks having, you know, passing by, so there wasn't just a total stop to traffic on the road, according to the way CSI has And so- Could you turn to the class of one analysis on the eco-protection claim? Could you address that? Yes. So, in this case, as to the class of one analysis, it's a selective enforcement claim, and so that's the basis for CSI's claim there. The weight restriction applied equally to everybody, and so that's where we cite to this, I think it's the Inquist case, not for the facts of that case, but for the analogy provided by the Supreme Court, where it was noted, you know, precisely an on-point analogy, that in that context, a police officer can't pull over everybody speeding on the road. Someone gets pulled over, someone else speeds past. In this case, John Large had advanced notice from CSI that CSI intended to violate its contract with MnDOT to use the road, potentially in violation of weight restrictions. John Large didn't know at the time, and that, of course, puts the county in an untenable position because it flouts around this Hall Road statutory scheme. And so, as CSI admits, John Large was there for either an hour and a half, two hours, between an hour and two hours, let's say. And while he was there at that scene, you know, of course, other vehicles passing by, this was not a complete lockdown of this road. So if other trucks pass by loaded, that's different from the CSI situation. My question was, as I understand it, the class of one precedent only applies where the defendant possesses investigatory authority and enforcement discretion. And I'm just wondering, does Mr. Large have any enforcement authority or discretion here? The district court recognized that Mr. Large has a statutory duty to maintain the roads in good condition. It's undisputed that his office would have the authority to shut down traffic on a road. So we haven't disputed or tried to run from the idea that, of course, you know, the Constitution applies to his actions. And, you know, therefore, we would say, yes, he does have the authority to conduct a stop. This was also a work zone. That's the other element that matters here. This was a county project was going on. There was reference to Knife River. I think that's the only evidence in the record of other trucks that passed. Those were trucks operating pursuant to a county contract to improve County Road 10. So again, just different from the typical, I think, class of one type case. With respect to qualified immunity, I just want to make a point on qualified immunity for all of the Section 1983 claims. The district court analyzed those claim by claim appropriately framing those issues. And CSI has continued to say that it's, you know, that the county engineer doesn't have the ability, for example, for Fourth Amendment purposes to conduct a stop, but hasn't cited to authority on that. Again, if the Constitution applies here and this was an act of the government, then it's almost akin to even if there were some sort of policy in the county engineer's office that said only law enforcement can conduct stops, that still wouldn't quite do it. It's got to be a violation. Mr. Large admitted that he exceeded his authority. How do you get around the case law that says qualified immunity is not available to someone who knowingly exceeds their authority? Knowingly violates the law, and CSI has not put forth any law that Mr. Large knowingly violated. The question in the deposition, and we lay out in our briefing the full context of that exchange, he says merely in the present tense after, you know, being hit with the same question repeatedly, that he believes he has the authority to control traffic on that road. The question, does he have the authority to detain? He says as of the date of his deposition, no, but there's no evidence in the record, nor can we extrapolate that present tense statements to the past. There's simply no evidence other than what John Large knew, and when he knew it, is set forth in his deposition and in his affidavit. And there's no evidence that he believed that he was in violation of the Constitution, nor is there evidence of controlling authority that he supposedly violated as of the date of the stop. I do want to touch then on the tortious interference claim. Again, the district court relied on Mr. Large's statutory authority and statutory duty to maintain the road. There's ample evidence in the record that Mr. Large voiced these concerns well in advance, and in fact, the very first time CSI proposed the use of County Road 10, Mr. Large objected to it at the pre-construction meeting. So there's evidence of that. And the district court then held that any interference that did occur was justified because of this. And so I think it's the Spice Corp case that the district court relied on just for the proposition that making a legitimate choice that you're entitled to make, even though you have knowledge it's going to have some sort of downstream effect, is legitimate. If MnDOT violated its contract with CSI by not designating County Road 10 as CSI requested, then that's an issue between CSI and MnDOT, and CSI and MnDOT are litigating that as we speak in state court. With regard to trespass to chattel, just 10 seconds left, the restatement is really the only thing the parties are relying on there. At all times, CSI was in control of its vehicles here. So that's all I have. I thank you. Just one last question. On the state law claims, did you move for summary judgment on the basis of official immunity? We did. We did, and it's the same necklace of facts, the same fact pattern from which all those claims arise. And so we believe qualified immunity applies to all of them. The district court didn't reach the issues of qualified immunity on the state law claims, but we believe that there is qualified immunity for those as well, just because it's the very same set of facts and circumstances. All right. Thank you. Mr. Brown, your rebuttal. Yes, thank you, Your Honor.  First of all, with respect to whether the violation of a weight restriction is a petty misdemeanor, the district court did not say this, and we do not believe that appellees have cited any authority for it. This argument, we believe, is not properly before the court. We haven't had a chance to address it in our briefs, because it hasn't been asserted by the district court or the appellees. With respect to whether reasonable suspicion should have quickly dissipated, based on the fact that a layperson could tell whether the trucks were loaded or unloaded, we completely agree. There's no evidence that Mr. Large asked whether the trucks were loaded or unloaded. There's no evidence that he made some kind of attempt to investigate whether the trucks were loaded or not and failed. The reasonable inference, and we're entitled to all reasonable inferences on summary judgment, is that a layperson could have determined in less than five minutes whether the trucks were loaded or not. Counsel, just a clarification. Does the county engineer in Minnesota have the authority to prohibit traffic on a county road? I'm not aware of authority that permitted Mr. Large to inhibit traffic on this road under these circumstances, no, your honor. Well, under any circumstance? I haven't found authority under any circumstance. Would you describe your claims against the county and on what basis those claims lie? Those claims are based on Mr. Large's actions. So they're respondeat superior in nature? That's correct, your honor. Okay. We didn't address that question in our briefs because the district court didn't get there, but that is the nature of our claims against the county as distinguished from Mr. Large. Okay. So did you allege liability under Monell? I beg your pardon, your honor. I'm not familiar with that case and I don't know the answer to your question. I want to address- Do you have a case from which we could say that it's clearly established that a county engineer could not take the action that Mr. Large took in this case? I do not, your honor. Our ability to find relevant authority on a lot of these propositions is somewhat hamstrung by the fact that this is a fairly unique situation. We rest that contention on the fact that we do not see any authority expressly authorizing the county engineer to take these actions. And also on the fact that the Fourth Amendment search and seizure law almost uniformly speaks in terms of police officers responding to suspicion of a crime. Okay. I want to briefly address the notice question and the timing of the issuance of the notice of new way restrictions. In the same email to which I directed you earlier, there is evidence that CSI received notice in a 119 email from MnDOT and started using the road 20 minutes before that at one o'clock. Therefore, there is a serious question here as to whether the notice was adequate. Well, counsel, why do they have to have any notice? It's a change in the, it's a valid change in the county ordinance, isn't it? It was at the time the signs were posted. But arguably, if my client was already on the road at the time the signs were changed, then those ordinances would not be effective as to my client's trucks. As long as the signs were posted. Correct. Briefly on the tortious interference question. The district court's decision relied and defendants have also relied on the fact that a county engineer generally has the ability to dictate weight limits on the roads under the right circumstances. That may be true, but inference, even for a justified means is not justified if it's conducted by unjustified. I'm sorry, interference for just ends is not permissible. If it's carried out through illegal or unjustified means. Finally, the fact that MnDOT could have avoided the breach of the contract here does not absolve the defendants of their interference with the contract. And we cited Calic versus Medtronic in our brief for that proposition. I see my time has elapsed. Unless the court has other questions, I will conclude my argument. All right. Thank you, Mr. Brown. Thank you also, Mr. Fullerton. The court appreciates both counsel's argument to the court this morning in helping us wrestle with the issues raised in your briefing. We'll take the case under advisement and render decision in due course. Thank you. Counsel may be excused. Thank you.